# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF IDAHO

---

In Re:

**Terrence J. Matthews,**

                    **Debtor.**

**Bankruptcy Case
No. 03-00998-JDP**

---

**Terrence J. Matthews,**

                    **Plaintiff,**
**vs.**

**Dennis Sallaz, Daryl Sallaz,
National Financial Services,
Randolf Lewis,**

                    **Defendants.**

**Adv. Proceeding
No. 16-06023-JDP**

---

## MEMORANDUM OF DECISION

---

**Appearances:**

> Terrence J. Matthews, Idaho City, Idaho, *pro se* Plaintiff.

> D. Blair Clark, Boise, Idaho, Attorney for Defendants**.**

MEMORANDUM OF DECISION – 1

### *Introduction*

In this adversary proceeding, Defendants Randolf Lewis, National

Financial Services, Daryl Sallaz, and Dennis Sallaz (collectively

"Defendants") move the Court to dismiss the claims made against them by

Plaintiff Terrence Matthews ("Debtor") with prejudice pursuant to Civil

Rule 12(b)(1)[1] and (6), made applicable by Rule 7012.  Dkt. No. 4 ("the

Motion").  Debtor, appearing *pro se*, filed an Opposition to the Motion.

Dkt. No. 9.[2]  The Court conducted a hearing on the Motion on November

29, 2016; Defendants' counsel appeared, but for reasons unknown to the

Court, Debtor did not.  Minute Entry, Dkt. No.  10.  After arguments by

Defendants' counsel, the Court took the issues under advisement.  *Id.*

---

[1]  Unless otherwise indicated, all Rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001–9037, all Civil Rule references are to the Federal Rules of Civil Procedure, Rules 1–86, and all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532.

[2] On August 29, 2016, Debtor objected to the Motion due to Defendants' delay in filing a memorandum in support of the Motion and Defendants' failure to file an answer or response to Debtor's complaint.  Dkt. No. 5.  Defendants subsequently filed a memorandum in support of the Motion on October 19, 2016; Debtor responded.  Dkt. Nos. 7, 9.  Because the Court perceives no prejudice to Debtor occurred from this delay, Debtor's objection is overruled.

MEMORANDUM OF DECISION – 2

Having considered the pleadings, briefs, and arguments put forth, as well as the applicable law, this Memorandum sets forth the Court's reasons for its disposition of the Motion.

### Factual Allegations

In resolving the Motion, the Court operates at some disadvantage due to Debtor's *pro se* status. It has endeavored to distill the relevant facts and understand Defendants' arguments by liberally construing the allegations in Debtor's lengthy, but at times vague, complaint and response to the Motion. To more fully understand the context in which Debtor makes his claims, exercising its discretion, the Court has taken judicial notice of the dockets, and some of the documents filed, in this adversary proceeding and in Debtor's chapter 13 bankruptcy case, Bankr. Case No. 03-00998-JDP. S*ee* Fed. R. Evid. 201; *Cohen v. NVIDIA Corp. (In re NVIDIA Corp. Sec. Litig.)*, 768 F.3d 1046, 1051 (9th Cir. 2014), *cert. denied sub nom. Cohen v. Nvidia Corp.*, 135 S. Ct. 2349 (2015) ((citing *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir.2001), and explaining that "In reviewing the sufficiency of a complaint, we limit ourselves to the complaint itself

MEMORANDUM OF DECISION – 3

and its attached exhibits, documents incorporated by reference, and

matters properly subject to judicial notice"). The Court has also considered

the various decisions and pleadings from the state court actions involving

the parties that Debtor has referenced in his complaint. *See Johnson v. Fed.*

*Home Loan Mortg. Corp.*, 793 F.3d 1005, 1007 (9th Cir. 2015) (stating that a

trial court "may consider extrinsic evidence not attached to the complaint if

the document's authenticity is not contested and the plaintiff's complaint

necessarily relies on it"). From this material, the following are assumed by

the Court to constitute the relevant facts.

**1.    The Lien**

Dennis Sallaz ("Sallaz") is an attorney and represented Debtor's ex-

wife, Jacqueline Mitchell, during their divorce proceedings. When Ms.

Mitchell did not pay Sallaz for all of his services, in August 2002, Sallaz

asserted an attorney's lien ("the Lien") against Ms. Mitchell's one-half

interest in a house she and Debtor co-owned ("the Property"). Compl. at

1, Dkt. No. 1. The house was subject to a mortgage executed by both Ms.

Mitchell and Debtor.

MEMORANDUM OF DECISION – 4

### 2.    Debtor's Bankruptcy

Following the divorce, in March 2003, Debtor filed a chapter 13 petition in this Court.  Bankr. Dkt. No. 1.  A few months later, Debtor's chapter 13 plan was confirmed.  Bankr. Dkt. No. 17.

Sallaz filed a proof of claim in Debtor's case for the attorney's fees Ms. Mitchell incurred during the divorce.  Bankr. Dkt. No. 18.  However, Debtor objected to allowance of Sallaz's claim, arguing that he was not liable for the fees.  Bankr. Dkt. No. 18.  The Court eventually entered a decision and order sustaining Debtor's objection and disallowing Sallaz's claim.  Bankr. Dkt. Nos. 38, 39.  In its decision, the Court concluded that Sallaz was not a creditor in Debtor's case because only Ms. Mitchell was obligated to pay Sallaz.  Memo. Decision at 11-14, Bankr. Dkt. No. 38.  In addition, the Court held that if the Lien was valid, it attached solely to Ms. Mitchell's interest as co-owner of the Property.  *Id.*

 Debtor successfully completed his chapter 13 plan, and in October 2007, he received his discharge and the bankruptcy case was closed. Bankr. Dkt. Nos. 61, 64, 67.

MEMORANDUM OF DECISION – 5

### 3.    Judgment and Foreclosure Proceeding

At some point in time, Sallaz apparently assigned his claim against

Ms. Mitchell, and his interest in the Lien, to National Financial Services

("National").  In February 2009, National commenced an action in state

court to enforce its claim and foreclose the Lien, naming Ms. Mitchell, the

holder of the mortgage, Idaho Housing Finance Association ("IHFA"), and

Debtor as defendants.  Compl. at 2–3; *see also* Bankr. Dkt. No. 82 at 7; State

Court Case No. CV-2009-0004375-C.  Ms. Mitchell did not appear or

defend in the state court proceeding, presumably because she had moved

to Florida, as evidenced by the fact that service upon her was accomplished

by publication in Idaho.  Compl. at 15.  However, Debtor filed an answer in

state court and contested the foreclosure explaining that he was unaware

of the Lien, and that he had been making payments on the mortgage and

paying other house expenses for Ms. Mitchell.   He also argued that

National's action was barred by the statute of limitations.  Compl. at 2.  The

state court held that Debtor lacked standing to contest National's action

against his ex-wife.  *Id.* at 3.  Despite Debtor's opposition, a money

MEMORANDUM OF DECISION – 6

judgment was entered against Ms. Mitchell in the amount of

approximately $30,000 ("the Judgment").  Compl. at 2.  Debtor appealed

the judgment against Ms. Mitchell, but in October 2009, the Idaho Supreme

Court dismissed Debtor's appeal, holding he could not file an appeal on

behalf of Ms. Mitchell.  Bankr. Dkt. No. 82 at 13, 16.

During the action, in an order denying summary judgment to

Debtor, the state court recounted the following concerning Debtor's

interest in the Property:

> On November 2, 2009, this court entered a Default Judgment
> Against Defendants Jacqueline Mathews Mitchell and Beeman
> Law Offices.[3]
>
> In essence the judgment forecloses any lien interest Defendant
> Beeman may have had in the subject property, awards a
> money judgment against [Ms. Mitchell], and determines that
> title to the subject property is held 50% by [Debtor] and 50%
> by National,[4] and is encumbered by the first lien of [IHFA]
> and the second lien of National.  The judgment directs that a
> foreclosure sale shall be held with proceeds to be disbursed to

---

[3] The Court can not discern what interest Beeman Law Offices may have
held in the Property.

[4] The Court is left to speculate how National obtained 50% ownership of
the Property prior to the sale of Ms. Mitchell's interest.

MEMORANDUM OF DECISION – 7

first pay off the first lien of IHFA, then to pay off the second
lien held by National,[5] with any remaining proceeds to be
split equally between [Debtor] and National.

Compl. at 3; Bankr. Dkt. No. 82 at 14.  In the same order, the state court

recognized that National was seeking only to foreclose the Lien on Ms.

Mitchell's interest in the Property.  Dkt. No. 82 at 20.

Following the entry of this order, in November 2009, Debtor filed a

Motion for Reconsideration, a Petition for a Writ of Prohibition, and a

Motion for Summary Judgment.  Bankr. Dkt. No. 82 at 8, 14.  All were

denied, again, because Debtor lacked standing to oppose National's

collection efforts since it sought to collect only from Ms. Mitchell and to

enforce the Lien solely as to Ms. Mitchell's interest in the Property, not

Debtor's interest.  Bankr. Dkt. No. 82 at 20 (summary judgment); Bankr.

Dkt. No. 82 at 26, 29-30 (petition for writ of prohibition).  The Idaho

Supreme Court subsequently denied Debtor's Motion for Stay of

Execution.  Compl. at 4.

---

[5] The Court is also left to speculate how National obtained a second
priority lien on the entirety of the Property that would have been paid prior to
Debtor receiving any portion of the proceeds.

MEMORANDUM OF DECISION – 8

### 4.   The Sheriff's Sale

A Notice of Sheriff's Sale was filed in July 2010 for a sale of the

Property that was to occur in September.  *Id.* at 4.  That same day, a Writ of

Execution was issued in state court for the total amount due and owing on

the Judgment of approximately $38,000.  Bankr. Dkt. No. 82 at 31-32.  The

sale apparently occurred, and a Sheriff's Certificate of Sale dated

September 22, 2010, was issued, which provided that the sheriff had levied

upon and sold at public auction "one (1) lot or parcel, to: [National] the

right, claim and interest of [Ms. Mitchell] as aforesaid, in and to [the

Property.]"  Bankr. Dkt. No. 82 at 34.  It further provided that National had

paid $10,000 cash and was given possession of the Property.  *Id.*  A

Sheriff's Deed to National was recorded on May 16, 2011.  Bankr. Dkt. No.

82 at 39.

### 5.   Debtor's First State Court Action

Following the sheriff's sale, in December 2010, Debtor filed a *pro se*

state court complaint against Sallaz and National (Case No. CV-OC-

1100140) claiming that procedural defects had occurred in the prior action,

MEMORANDUM OF DECISION – 9

and that Defendant's attorneys had engaged in wrong-doings, and that, as

a result, Debtor had been wrongfully deprived of his interest in the

Property.  Compl. at 4; Bankr. Dkt. No. 71 at 12.   Eventually, in August

2012, the state court entered an order establishing the issues for trial.  It

observed that there was "confusing language" in the state court's decision

in the prior action that could imply that Debtor's interest in the Property

was to be sold, but the court stated, "it is clear in context that all the court

was dealing with was the ex-wife's undivided one-half share."  Bankr.

Dkt. No. 71 at 13.  Regarding the sale, the court also stated that the

Sheriff's Certificate of Sale contained "boiler plate language that may have

been presented to the prior court, and perhaps to the sheriff, that has

confused the issues."  Bankr. Dkt. No. 71 at 13.  Thus, the state court

decided that the relief it was able to provide in the present action was to

quiet title and declare that Debtor continued to hold an undivided one-half

interest in the Property, subject only to IHFA's deed of trust; and to

possibly grant relief to Debtor in the nature of an accounting for any rents

and profits received by National from the Property.  Bankr. Dkt. No. 71 at

MEMORANDUM OF DECISION – 10

13.  However, prior to any trial and resolution in this action, Debtor's

bankruptcy case was reopened.

### 6.      First Reopening of the Bankruptcy Case

On August 22, 2012, Debtor filed a *pro se* "Contempt Complaint"

with the United State District Court for the District of Idaho. Case No. 12-

CV-00435-REB, Dkt. No. 3.  The District Court entered an order

"reassigning" the action to this Court.  Case No. 12-CV-00435-REB, Dkt.

No. 9.  Reading Debtor's Contempt Complaint liberally, this Court

reopened Debtor's bankruptcy case to consider the "complaint," deemed

and treated it as a "motion seeking an order holding Sallaz in contempt

and for other relief for allegedly violating the orders of the Court and/or

the discharge", and ordered Sallaz to respond to the Contempt Complaint.

Bankr. Dkt. No. 69 at 1–4.

The Court conducted a hearing on October 2, 2013.  Bankr. Dkt. No.

84.  After hearing comments by Debtor, Debtor's bankruptcy counsel, and

Sallaz's counsel, the Court ordered Debtor's bankruptcy counsel to file an

amended motion.  Minute Entry, Bankr. Dkt. No. 84.  However, for

MEMORANDUM OF DECISION – 11

reasons unknown to the Court, Debtor withdrew the Contempt

Complaint; the Court entered an order closing the reopened case on

October 21, 2013. Bankr. Dkt. Nos. 86, 87.

### 7.    Resolution of Debtor's First State Court Action

In October 2012, after a trial, the state court entered Findings of Fact,

Conclusions of Law and Directions for Entry of Judgment in Debtor's first

state court action. Compl. at 6. The judgment declared Debtor to be the

owner of an undivided one-half interest in the Property. *Id.* As for the

accounting of rents and profits, based on the evidence, the state court

found that Defendants had made a single payment of $7,500 to IHFA in

June 2011, to cure a default on the mortgage and to prevent foreclosure.

*Id.* Altogether, the court found that Defendants had made paid a total of

$14,700 to IHFA prior to trial. *Id.*

Debtor represents that, following this ruling, in September 2012, a

quitclaim deed was recorded to establish that Debtor "got half ownership

of the property." Compl. at 6–7. However, despite the Defendants'

representations to the state court that they had made payments to IHFA, in

MEMORANDUM OF DECISION – 12

March 2013, Debtor received a letter from that creditor explaining that

Debtor would receive the sum of $8,503.90 as his share of the sale proceeds

from a trustee's foreclosure sale.  Compl. at 7.  Debtor investigated and

learned that the IHFA loan had gone into default because no payments

had been made to IHFA since the sheriff's sale in 2010.  Compl. at ¶ 22.

While a foreclosure sale was originally set for June 3, 2011, IHFA had

agreed to postpone the sale to allow Sallaz time to either refinance IHFA's

mortgage loan, or to assume the loan, if he would tender a good faith

payment of $7,500, the amount then in arrears.  Compl. at 7.

### 8.    Debtor's Second State Court Action

Seemingly in response to this information, Debtor filed yet another

*pro se* state court complaint against Sallaz in September 2013,[6] CV-OC-13-

6926.  Compl. at 20.  In it, Debtor alleged that Sallaz forged another

attorney's signature on documents submitted to the state court, that the

Property was sold while it was subject to bankruptcy protection, that the

---

[6] Debtor's Complaint alleges this filing occurred in September 2014, but given the time line and other events, and the state court case number, it seems more likely to have been filed in September 2013.

MEMORANDUM OF DECISION – 13

$7,500 was never paid by Sallaz to IHFA despite Sallaz's testimony in state

court that it was, and that Defendants should have been required to make

the mortgage payments for the Property.  Compl. at 21.

The state court dismissed the action in April 2016.  Compl. at 21.

According to Debtor, the state court stated that Debtor was barred from

raising some or most of the issues due to the preclusive effect of the

judgment entered in the prior action.  Compl. at 21.  Moreover, it held that,

despite Debtor not having control or possession of the Property, he

remained liable for payments on the mortgage, as the IHFA loan was still

in his name.  Compl. at 18, 21.

**9.     This Reopening and Adversary Proceeding**

On July 5, 2016, Debtor filed a motion to again reopen his

bankruptcy case.  Bankr. Dkt. No. 89.  The Court granted his motion on

July 6.  Bankr. Dkt. No. 91.  Debtor then commenced this adversary

proceeding on July 18, 2016.  Dkt. No. 1.  He seeks recovery of the

payments he made to the chapter 13 trustee during his plan, lost rental

income from the Property from the time the 2010 sheriff's sale occurred,

MEMORANDUM OF DECISION – 14

his lost share of proceeds from the sale of the Property,[7] his lost share of

the property, future lost rental income for the next ten years, and punitive

damages.  Compl. at 19, 22.

### *Legal Standard for a Motion to Dismiss*

Civil Rule 12(b)(6), made applicable in adversary proceedings by

Rule 7012(b), governs motions to dismiss for failure to state a claim.  To

avoid dismissal, a complaint must plead sufficient facts, which if accepted

as true, support a claim that is "plausible on its face."  *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

(2007)).  Plausibility means "more than the sheer possibility that a

defendant has acted unlawfully."  *Id.*; *see also Hopkins v. Nakamoto (In re*

*Hoku Corp.)*, 554 B.R. 901, 901 (Bankr. D. Idaho 2016).

Generally, the Court must assume the veracity of all well-pled

factual allegations in the complaint.  *Id.* at 678-79 (citing *Twombly*, 550 U.S.

at 555).  Moreover, they are to be interpreted in a light most favorable to

---

[7] The Court cannot discern whether the Property has now been sold due to the default of the first lien held by IHFA, as there is no evidence of such a sale, and Debtor asks for his lost share "if allowed to sell."  Compl. at 22.

MEMORANDUM OF DECISION – 15

the nonmoving party. *Intri-Plex Techs., Inc. v. Crest Grp., Inc.*, 499 F.3d

1048, 1052 (9th Cir. 2007) (citing *Decker v. Advantage Fund, Ltd.*, 362 F.3d

593, 595–96 (9th Cir.2004)).  However, "a plaintiff's obligation to provide

the grounds of his entitlement to relief requires more than labels and

conclusions, and a formulaic recitation of the elements will not do."

*Twombly*, 550 U.S. at 555 (citations omitted).  Thus, "[w]here a complaint

pleads facts that are 'merely consistent' with a defendant's liability, it

'stops short of the line between possibility and plausibility of "entitlement

to relief."'" *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 557).

    *Pro se* pleadings are held to a less stringent standard and are read

generously "however inartfully pleaded."  *Davis v. Silva*, 511 F.3d 1005,

1009 (9th Cir. 2008) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per

curiam)); *see also Reynard v. Karass (In re Saito Bros Inc.)*, 560 B.R. 540, 545

(Bankr. D. Idaho 2016).  *Pro se* complaints "may be dismissed for failure to

state a claim only where 'it appears beyond doubt that the plaintiff can

prove no set of facts in support of his claim which would entitle him to

relief.'"  *Weilburg v. Shapiro*, 488 F.3d 1202, 1205 (9th Cir. 2007) (quoting

MEMORANDUM OF DECISION – 16

*Franklin v. Murphy*, 745 F.2d 1221, 1228, 1230 (9th Cir. 1984) (quoting

*Haines v. Kerner*, 404 U.S. 519, 520–21 (1972))); *see also Nordeen v. Bank of*

*Am., N.A. (In re Nordeen*), 495 B.R. 468, 477 (9th Cir. BAP 2013) (citing

*Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).  Moreover, the Court may dismiss

a *pro se* complaint without leave to amend "only if it is absolutely clear that

the deficiencies of the complaint could not be cured by amendment."

*Weilburg*, 488 F.3d at 1205 (citing *Schucker v. Rockwood*, 846 F.2d 1202,

1203–04 (9th Cir. 1988)).

### Analysis and Disposition

In his complaint and response in the adversary proceeding, Debtor

recites, in detail, the arguments he made in the various state court actions,

along with his disagreements with the various rulings entered by the state

courts therein. These arguments implicate a broad array of issues

including application of the statute of limitations, his legal standing to

challenge the actions taken by Sallaz and National against his ex-wife, and

the fraud he alleges Defendants perpetrated.   However, in his complaint,

under the heading "cause of action," Debtor attempts to summarize his

MEMORANDUM OF DECISION – 17

theories for obtaining relief as follows:

> **Count One** - Can real property be sold subject to federal bankruptcy protection?

> **Count Two** - Can an attorney circumvent the Federal Bankruptcy Law?

> **Count Three** - Can real property be sold to satisfy an attorney's lien?

> **Count Four** - Can the sale of real property attach to the petitioner's share of the property when the property is jointly owned?

> **Count Five** - Is a person liable for a mortgage after property was sold at a sheriff's sale and until they are awarded half of the property back?

Compl. at 17-18.

In the Memorandum in Support of Motion to Dismiss, Defendants argue that Debtor has failed to state a claim upon which any relief can be granted because the state court decisions, coupled with the subsequent trustee's sale of the Property, occurred after Debtor's bankruptcy case was closed, at a time when the automatic stay no longer applied.  Defs.' Memo. in Supp. of Mot. to Dismiss at 4, Dkt. No. 7.  Moreover, they argue that

MEMORANDUM OF DECISION – 18

many of Debtor's complaints do not raise bankruptcy law issues, but instead, are collateral attacks on the state court judgments, claims which Defendants argue this Court lacks the jurisdiction to entertain.  *Id*. at 6–7.

The Court agrees that Debtor's complaint fails to state a cognizable claim upon which the Court may grant any relief.

## A.    Count One - "Property Subject to Bankruptcy Protection"

Debtor claims in Count One, and then repeats in his other counts, that Defendants wrongfully sold the Property while it was "subject to bankruptcy protection."  Compl. at 17.   However, in asserting this claim, Debtor misunderstands the protections afforded in the Code for a chapter 13 debtor's property upon closure of the bankruptcy case.

### 1.    Automatic Stay

When a debtor commences a bankruptcy case, all of his or her legal or equitable interests become property of the bankruptcy estate, and the automatic stay operates to prevent attempts by others to enforce or collect prepetition claims against the debtor or the debtor's property, including the enforcement of a lien.  §§ 541; 362(a)(4).  But the automatic stay has a

MEMORANDUM OF DECISION – 19

limited duration; it protected Debtor's interest in the Property, but only so

long as the Property continued to be property of the estate.  § 362(c)(1).   In

a chapter 13 case, unless a debtor's chapter 13 plan or the confirmation

order provides otherwise, all property of the estate revests in the debtor,

and is no longer property of the estate, upon confirmation of the debtor's

plan.  § 1327(b); *Cal. Franchise Tax Bd. v. Jones (In re Jones)*, 420 B.R. 506, 514

(9th Cir. BAP 2009), *aff'd on other grounds*, 657 F.3d 921 (9th Cir. 2011)

(citation omitted).  Here, Debtor's chapter 13 plan explicitly provided that

all property of the estate would not revest in him upon confirmation, but

did not provide a specific time for when it would.  Am. Chap. 13 Plan at 6,

Bankr. Dkt. No. 11.  Given this omission from his plan, the Court

concludes that Debtor's interest in the Property continued as property of

the estate until his bankruptcy case was closed in October 2007.  § 554(c)

(providing that estate property not administrated when a bankruptcy case

is closed is abandoned to the debtor).  Thus, the automatic stay ceased to

protect the Property in October 2007.

Defendants' efforts to enforce the Lien and to sell the Property

MEMORANDUM OF DECISION – 20

occurred well after that time.  National did not file its state court action

until 2009.  Because of this Defendants' actions could not have violated the

automatic stay.

### 2.    The Discharge

While the automatic stay ceases to protect a debtor's property when

it is no longer property of the estate, after the completion of plan

payments, a debtor is granted a discharge of all debts provided for by the

plan or disallowed under § 502.  § 1328(a).   Section 524 explains that the

discharge, "operates as an injunction against the commencement or

continuation of an action, the employment of process, or an act, to collect,

recover or offset any such debt as a *personal liability* of the debtor . . . ."

(emphasis added).  § 524(a)(2).

Debtor completed his plan payments and was granted a discharge in

October 2007.  Recall, Sallaz filed a claim in Debtor's bankruptcy case for

the attorney's fees incurred by Ms. Mitchell.  The Court disallowed this

claim under § 502(b) precisely because Debtor was not personally liable for

it.  Thus, if Sallaz or National, at anytime after the discharge was entered,

MEMORANDUM OF DECISION – 21

attempted to collect that debt from Debtor or from his interest in the

Property, they violated the discharge injunction.  However, it is clear to the

Court, as it was clear to the state courts, that the original action against the

Property was not intended to collect from Debtor, but only to satisfy the

debt owed by Ms. Mitchell through sale of only her interest in the

Property.  Thus, those actions did not violate the discharge injunction.

Debtor also alleges Defendants violated his "bankruptcy protection"

because Defendants' misrepresentations caused him to default on the

mortgage held by IHFA,[8] eventually resulting in the trustee's sale of the

Property.  However, even if Defendants somehow lied to the state court

about the status of the mortgage payments, such would not amount to a

violation of the bankruptcy discharge injunction; Defendants' alleged

misrepresentations concerning the amount they were paying on his

mortgage do not amount to an attempt to collect a debt from Debtor.

While such conduct perhaps could be addressed in state court, it does not

---

[8] Debtor provided in his chapter 13 plan that IHFA would retain its lien on
the Property until the secured claim was paid in full.  Bankr. Dkt. No. 11 at 3–4.

MEMORANDUM OF DECISION – 22

violate the protections afforded Debtor under federal bankruptcy law.

In conclusion, on the facts alleged by Debtor, Defendants did not violate the "bankruptcy protection" afforded to Debtor.  The automatic stay was not in effect during any of the alleged conduct, nor would that conduct violate the discharge injunction.  For these reasons, Count One fails to state a claim and this Court can grant Debtor no relief.  Count One must be dismissed.

**B.    Count Two - "Circumvention of Federal Bankruptcy Law"**

Debtor argues that Sallaz admitted to "circumventing" bankruptcy law when he stated in an affidavit that the statute of limitations on the foreclosure action was tolled during the pendency of the bankruptcy action.  Compl. at 17.  Defendants argue this does not amount to any violation of the Code, and moreover, that any statute of limitation defense could only be asserted by Ms. Mitchell, not Debtor.  Defs.' Memo. at 6.

Debtor has not indicated, nor is the Court aware of any provisions of the Bankruptcy Code that would have prohibited Sallaz from waiting for Debtor's bankruptcy case to conclude before filing a foreclosure action

MEMORANDUM OF DECISION – 23

as to the Property.  Morever, Debtor's argument that the statute of

limitations was tolled during the bankruptcy does not render Sallaz's

representations an attempt to circumvent federal bankruptcy law, but

merely an argument that his actions were consistent with the law.  As

there is no legal basis for the Court to find the alleged actions of Sallaz

violated the Code, the Court concludes that Count Two also fails to state a

claim and must be dismissed.

**C.  Counts Three, Four, and Five.**

The state court rejected Debtor's several attempts to obtain relief.

Debtor alleges here that the state court decisions were incorrect.

Defendants argue that Counts Three, Four, and Five of Debtor's complaint

are, in substance, collateral attacks on the state courts' decisions, and any

review by this Court of those decisions is prohibited by the Rooker-

Feldman doctrine.  Defs.' Memo. at 6-8.  The Court agrees.

"Rooker–Feldman . . . is a narrow doctrine, confined to 'cases

brought by state-court losers complaining of injuries caused by state-court

judgments rendered before the [bankruptcy] court proceedings

MEMORANDUM OF DECISION – 24

commenced and inviting [bankruptcy] court review and rejection of those

judgments.'" *Lopez v. Emergency Serv. Restoration, Inc. (In re Lopez)*, 367 B.R.

99, 104 (9th Cir. BAP 2007) (citing *Lance v. Dennis*, 546, 459 (2006) (citing

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005))).  The

Ninth Circuit has explained:

> At its core, the Rooker–Feldman doctrine stands for the
> unremarkable proposition that federal district courts are
> courts of original, not appellate, jurisdiction.  *See* 28 U.S.C. §§
> 1331, 1332.  Thus, it follows that federal [bankruptcy] courts
> have "no authority to review the final determinations of a
> state court in judicial proceedings."

*Gruntz v. Cty. of Los Angeles (In re Gruntz)*, 202 F.3d 1074, 1078 (9th Cir.

2000).

Counts Three and Four ask the Court to determine the validity of

the Lien and whether it could attach to the Property.  These issues were

clearly addressed in Debtor's first state court action, where the state court

decided that the Lien attached only to Ms. Mitchell's interest in the

Property, and that it was only her interest that was sold at the sheriff's sale

in 2010.

MEMORANDUM OF DECISION – 25

Count Five asks the Court to excuse Debtor's obligation to make the
IHFA mortgage payments after the sheriff's sale.  Compl. at 17–18.  Again,
this issue was clearly addressed in Debtor's second state court action,
where the court held that, even after the sheriff's sale, he was still liable for
the mortgage because it was still in his name.

Because Counts Three, Four, and Five were all clearly raised and
adjudicated by state courts in decisions entered before the commencement
of this adversary proceeding, under the Rooker-Feldman doctrine, this
Court lacks any authority to review them, what more disturb them.  Thus,
Defendant is entitled to no relief from this Court and Counts Three, Four,
and Five must be dismissed.

## D.   Dismissal With Prejudice

As noted above, the Court may dismiss a *pro se* complaint without
leave to amend "only if it is absolutely clear that the deficiencies of the
complaint could not be cured by amendment."  *Weilburg*, 488 F.3d at 1205
(citing *Schucker*, 846 F.2d at 1203–04).  The Court recently explained that :

The Court is to freely give leave to amend a complaint when

MEMORANDUM OF DECISION – 26

> justice so requires.  In the Ninth Circuit, whether leave to
> amend should be granted is generally determined by
> considering the following factors: (1) undue delay; (2) bad
> faith; (3) futility of amendment; and (4) prejudice to the
> opposing party.

*Hopkins v. Nakamoto (In re Hoku Corp.)*, 554 B.R. 901, 917 (Bankr. D. Idaho

2016) (citations omitted).

Here, based upon Debtor's many attempts to obtain relief in this

Court, it is absolutely clear that Debtor cannot cure the deficiencies in his

complaint through an amendment.  While Debtor has not requested leave

to amend, or suggested how he might amend his complaint to overcome

any deficiencies, allowing Debtor to amend his complaint would be futile

and would prejudice the Defendants.

As explained above, as for Count One and Two, the Code provided

no protections to Debtor from Defendants' efforts to collect from Ms.

Mitchell, or to foreclose upon and sell her interest in the Property.  Thus,

any attempt to amend those claims would be futile.

As for Counts Three, Four, and Five, in essence, as the "loser,"

Debtor asks this Court to review the unfavorable outcomes occasioned in

MEMORANDUM OF DECISION – 27

the state courts' decisions.  Under the Rooker-Feldman doctrine, this Court

may not do so.

At bottom, if Debtor has any remedy, it must come from the state

court, not the federal bankruptcy courts.  The Court is convinced that

Debtor can allege no set of facts to support any plausible claim for relief

under the Code.  As a result, the Court declines to prejudice Defendants by

requiring them to respond to yet another attempt to litigate Debtor's

meritless federal claims.

### Conclusion

For these reasons, the Court grants the Motion and will dismiss

Debtor's complaint with prejudice.  A separate order will be entered.

Dated:  January 13, 2017

Honorable Jim D. Pappas
United States Bankruptcy Judge

MEMORANDUM OF DECISION – 28